IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ERIC SHAWN RAY, #210440 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20cv856 |
| | § | |
| COLLIN CO. SHERIFF'S OFFICE, | § | |
| ET AL. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the court are Defendant Collin County's Motion to Dismiss (Dkt. #72) and Defendants Sheriff Jim Skinner ("Sheriff Skinner"), Lieutenant Christensen, Officer Shannon Young, and Officer Green's (together, the "Sheriff Office Defendants") Second Motion to Dismiss (the "Sheriff Office Defendants' Motion to Dismiss") (Dkt. #73) (together with Collin County's Motion to Dismiss, the "Motions to Dismiss"). To date, *pro se* Plaintiff Eric Shawn Ray ("Plaintiff") has not filed a response. For the reasons that follow, the court recommends the Motions to Dismiss (Dkt. ##72, 73) be **GRANTED** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE.**

**I.   BACKGROUND**

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this Amended Complaint against Collin County, Sheriff Skinner, Lieutenant Christensen, Officer Young, and Officer Green. (Dkt. #54).[1] As relevant here, the thrust of Plaintiff's Amended Complaint alleges that, during his extradition from Texas to Oklahoma, he was forcefully transferred from the holding tank in the Collin County Detention Facility to the custody of the McCurtain County, Oklahoma Sheriff's

---

[1] Plaintiff named additional Defendants and asserted additional claims in his Amended Complaint (Dkt. #54). In an earlier Report and Recommendation (Dkt. #61), which was adopted by the District Judge (Dkt. #71), several Defendants and claims were dismissed from this lawsuit.

Office, which resulted in permanent injuries to his arm, back, and neck. Specifically, Plaintiff alleges:

> On 12-13-18 Collin Co. Sheriff Officers Young, Green, and Lt. Christenson attacked Plaintiff in an illegal exchange of custody at the Collin Co. Jail causing injury to Plaintiff['s] arm[,] back[,] and neck which has resulted in permanent nerve damage. Plaintiff had refused to submit to the illegal exchange of custody while explaining to Young, Green, and Christenson that there had been no governor's warrant issued in the State of Texas and the "Extradition" was being conducted illegally and in fact plaintiff was held illegally. It was at this point the Lt. kept returning to the Sheriff Skinner and the McCurtain Co. Deputy Pittman then returning back to plaintiff stating that if plaintiff did not submit he would be forcefully removed from Texas and so it was. Plaintiff believes Young caused the injuries because Green and Lt. seem to only be doing as told while Young was causing all the pain although it was hard to tell for plaintiff was face down on the ground. Green is the only one that seemed to want to help but refused.

(Dkt. #54, pp. 17-18).

Plaintiff also alleges that, during his approximately forty-day confinement in the Collin County Detention Facility, he was denied kosher meals (Dkt. #54, p. 20) and forced to "sit upright for . . . 3 plus days in a plastic chair in the booking area of Collin Co. without sleep during the intake process" at the Collin County Detention Facility. (Dkt. #54, p. 13). Plaintiff indicates that these were Collin County policies or practices that violated his civil rights. As relief, Plaintiff seeks, among other things, compensatory and punitive damages, a declaration that "the acts and omissions described [in the Amended Complaint] violated Plaintiff's rights," and correction of Collin County's "flawed polic[ies]." (Dkt. #54, p. 4).

On March 2, 2023, Collin County moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing Plaintiff's Amended Complaint fails to state any plausible claims against Collin County. (Dkt. #72). The Sheriff Office Defendants also moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6), urging Plaintiff's claims should be dismissed because: (1) Plaintiff failed to comply with the Prisoner Litigation Reform Act

2

("PLRA"); (2) Plaintiff failed to give proper notice of the claims against them; (3) no plausible allegations exist as to personal involvement by Sheriff Skinner; and (4) Plaintiff failed to plead any plausible claims that would defeat their entitlement to qualified immunity. (Dkt. #73) To date, Plaintiff has not filed a response.[2]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the court's review is limited to

---

[2] Approximately ten months have elapsed since the Motions to Dismiss (Dkt. ##72, 73) were filed, and Plaintiff has not filed responsive briefing. A failure to respond to a motion to dismiss creates the presumption that Plaintiff has no facts to controvert the motion. *See* Local Rule CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.").

the complaint, any document attached to the complaint, any document attached to the motion to dismiss that is central to the claim and referenced by the complaint, and any facts subject to judicial notice. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

The court is also mindful it "must construe the pleadings of *pro se* litigants liberally to prevent the loss of rights due to inartful expression." *Perez v. Dall. Cnty. Jail*, No. 3:20-cv-01761, 2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). "But 'liberal construction does not require that the Court . . . create causes of action where there are none.'" *Rolan v. LaSalle Sw. Corr.*, No. 3:20-cv-2842, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (quoting *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)).

### III.  ANALYSIS

**A.  <u>Religious Land Use and Institutionalized Persons Act ("RLUIPA")</u>**

Liberally construed, Plaintiff's Amended Complaint is seeking monetary and declaratory or injunctive relief under RLUIPA based on the allegation that he was denied kosher meals during his confinement at the Collin County Detention Facility.

"RLUIPA provides that 'no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if that burden results from a rule of general applicability,' unless the burden 'is in furtherance of a compelling government interest' and 'is the least restrictive means of furthering that compelling government interest.'" *Chance v. Tex. Dep't of Crim Just.*, 730 F.3d 404, 410 (5th Cir. 2013) (quoting 42 U.S.C. § 2000cc–1(a)). Under RLUIPA, "[t]he plaintiff initially bears the burden of showing that the

4

challenged government action substantially burdens the plaintiff's religious exercise" and, if the plaintiff makes such a showing, "the burden shifts to the government to show that its action or policy is the least restrictive means of furthering a compelling interest." *Id.* (quotation omitted).

RLUIPA unambiguously creates a private right of action for injunctive and declaratory relief. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009), *aff'd sub. nom.*, *Sossamon v. Texas*, 563 U.S. 277 (2011). However, the Fifth Circuit has made clear monetary damages are not available for claims against state officials under RLUIPA. *See id.* at 331; *see also DeMoss v. Crain*, 636 F.3d 145, 151 (5th Cir. 2011) ("RLUIPA does not create a cause of action for damages against [the defendants] in their official capacities, nor does it create a cause of action against defendants in their individual capacities.") (quotation omitted). Accordingly, the court only considers whether it has jurisdiction over any request by Plaintiff that he be served kosher meals at the Collin County Detention Facility.

Plaintiff is no longer confined at the Collin County Detention Facility and is currently incarcerated at the Oklahoma State Prison. Therefore, any request by Plaintiff that he be served kosher meals at the Collin County Detention Facility is moot. *See Moussazadeh v. Tex. Dep't of Crim. Just.*, No. G-07-574, 2009 WL 819497, at *9 (S.D. Tex. Mar. 26, 2009) ("Plaintiff is no longer incarcerated [i]n a TDCJ Unit that is incapable of providing him with a kosher diet to accommodate his religious beliefs. Because he has been transferred to the Stringfellow unit, where kosher food is prepared and served in a kosher kitchen, [the] plaintiff's request for injunctive and declaratory relief is moot." (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001))); *Corbeil v. Moore*, No. 08-cv-1072, 2009 WL 320738, at *2 (W.D. La. Jan. 30, 2009) (collecting cases) ("Plaintiff is no longer incarcerated at the RPCC. His transfer to the United States Penitentiary— Pollock renders his claim for prospective injunctive relief against the defendants moot."); *see also*

5

*Herman*, 238 F.3d at 665 ("Any suggestion of relief based on the possibility of transfer back to ECDC is too speculative to warrant relief." (citing *Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir. 1987))). As Plaintiff's request for injunctive or declaratory relief under RLUIPA is now moot, the court lacks subject-matter jurisdiction. *See Copeland v. Livingston*, 464 F. App'x 326, 331 (5th Cir. 2012) (per curiam); *Edison v. Avalon Corr. Servs., Inc.*, No. 4:16-cv-683, 2016 WL 6568011, at *2–3 (S.D. Tex. Nov. 3, 2016) (dismissing without prejudice and denying as moot prisoner's claims for injunctive and declaratory relief).

Thus, to the extent Plaintiff seeks relief under RLUIPA, such a claim should be denied as moot and dismissed without prejudice for lack of jurisdiction.

## B. 42 U.S.C. § 1983

"Section 1983 is not a general tort remedy available to 'all who suffer injury at the hands of the state or its officers.'" *Waddleton v. Rodriguez*, 750 F. App'x 248, 252 (5th Cir. 2018) (per curiam) (quoting *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981)). To state a claim under § 1983, "a plaintiff must allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 241 (5th Cir. 2021) (per curiam) (quoting *Bryant v. Mil. Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010)).

### 1. Plaintiff's Claims Against Collin County

Plaintiff seeks to hold Collin County liable for the alleged constitutional violations related to his forceful extradition transfer, the denial of kosher meals, and being forced to sit upright in a chair without sleep for three days or more during booking at the Collin County Detention Facility.

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "municipalities may be sued under § 1983 but cannot be held liable for acts of their employees under a theory of *respondeat superior*." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021). To state a claim for municipal liability under *Monell*, Plaintiff must plead three elements: (1) an official policy; (2) that was promulgated by a policy maker; and (3) that was the "moving force" behind the violation of the constitutional right. *Id.* (quoting *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017)); *see also Doe v. Harris Cnty.*, No. 21-20251, 2022 WL 220114, at *5 (5th Cir. Jan. 24, 2022) (per curiam) (applying the rule to claims asserted against a county entity). A policy constitutes the "moving force" behind an alleged violation if there is "'a direct causal link' between the policy and the violation." *See Covington v. City of Madisonville, Tex.*, 812 F. App'x 219, 225 (5th Cir. 2020) (per curiam) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)). Additionally, "[t]he official policy itself must be unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" *James*, 577 F.3d at 617 (quoting *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).

An "official policy" under *Monell* can take different forms: it can be either an official written policy or a "widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Gomez*, 18 F.4th at 777 (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018)). A plaintiff who does not allege an official written policy faces a high bar to prove an official custom:

> Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body that the objectionable conduct is the expected, accepted practice of city employees. It is thus clear that a plaintiff must demonstrate a pattern of abuses that transcends the error made in a single case. A pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts,

7

> but rather must point to the specific violation in question. *A pattern also requires sufficiently numerous prior incidents, as opposed to isolated instances*.

*Peña Arita*, 470 F. Supp. 3d at 706 (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009)) (emphasis added). "[I]solated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Gates v. Tex. Dep't of Protective and Regul. Servs.*, 537 F.3d 404, 437 (5th Cir. 2008) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)). This is true even at the pleading stage. *See, e.g.*, *Feliz v. El Paso Cnty.*, 441 F. Supp. 3d 488, 503 (W.D. Tex. 2020) ("[A] plausible [municipal liability] claim requires more than a recitation of the incident in which the plaintiff was personally involved."); *Rodriguez v. S. Health Partners, Inc.*, No. 3:20-CV-0045-D, 2020 WL 7056336, at *9 (N.D. Tex. Dec. 2, 2020) (finding the plaintiff "failed to allege facts sufficient to permit the court to infer the existence of an official custom" because she "has not alleged, other than in conclusory terms, another instance" of a violation similar to that which she experienced).

Hence, in cases where courts have found the existence of a municipal custom, the plaintiffs have specifically pleaded incidents of constitutional infringement or alleged facts regarding not just themselves, but others, to indicate that other violations may have occurred. *See Feliz*, 441 F. Supp. 3d at 503 (finding the plaintiff pleaded a custom where the plaintiff cited to other litigation that "involved improper medical care of a detainee" at the same facility and a state commission report that "found pervasive failures in [the facility's] provision of health care"); *Mathis v. S.W. Corr., LLC*, No. 5:20-cv-146, 2021 WL 5088276, at *40 (E.D. Tex. June 15, 2021), *report and recommendation adopted*, 2021 WL 4129123 (E.D. Tex. Sept. 10, 2021) (finding the plaintiff pleaded a custom where the plaintiff alleged "multiple other deaths that occurred" in the facility as a result of the jailers' actions); *Carrillo v. Buendia*, No. 2:20-cv-28, 2020 WL 4584380, at *19

(finding the plaintiff pleaded a custom where he pleaded the alleged wrongdoing was widespread and affected all mentally ill inmates confined in the jail).

Even assuming Plaintiff alleged sufficient facts to show his constitutional rights were violated,[3] the court finds Plaintiff has failed to sufficiently plead any claim of municipal liability. Review of the Amended Complaint shows Plaintiff has failed to identify any policy or practice of Collin County related to his specific allegations. Because Plaintiff did not allege a written policy, Plaintiff was required, at a minimum, to allege facts indicating that other constitutional violations may have occurred as a result of the jailers' actions. Plaintiff failed to do so. Plaintiff fails to allege specific instances where other inmates were similarly victimized. Plaintiff's allegations indicate Plaintiff's alleged constitutional injuries were the result of isolated occurrences and not pervasive policies or customs that can be attributed to Collin County. Without more, the court cannot find Plaintiff has stated a policy or custom attributable to Collin County. *See Venzor v. Collin County, Texas*, No. 4:20-CV-318-ALM-KPJ, 2022 WL 666989, at *7 (E.D. Tex. Feb. 16, 2022), r*eport and recommendation adopted sub nom. Venzor v. Collin Cnty., Texas*, No. 4:20-CV-318-ALM-KPJ, 2022 WL 656828 (E.D. Tex. Mar. 4, 2022) (holding the plaintiff failed to allege a custom where the plaintiff alleged that the jailers failed to observe the plaintiff every thirty or sixty minutes, but did not allege that other inmates were similarly victimized by the jailers' failure to observe); *Harris v. Brown*, No. 3:21-01332, 2021 WL 5822100, at *9 (W.D. La. Nov. 22, 2021), *report and recommendation adopted*, 2021 WL 5811971 (W.D. La. Dec. 7, 2021) (holding the plaintiff failed to allege a custom when his allegations were "conclusory and detail no specific

---

[3] Plaintiff cannot assert a First Amendment violation for denial of a kosher diet. The Fifth Circuit has previously held that the denial of a kosher diet does not violate the First Amendment. *See Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007); *see also Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988) (holding "that prisons need not respond to particularized religious dietary requests" (citing *Udey v. Kastner*, 805 F.2d 1218 (5th Cir. 1986))); *Holmes v. Davis*, No. 6:20cv333, 2021 WL 2152544, at *4 (E.D. Tex. Mar. 30, 2021), *report and recommendation adopted*, 2021 WL 2141486 (E.D. Tex. May 26, 2021) ("The Fifth Circuit has never held that inmates of any faith enjoy a First Amendment right to the religious diet of their choice.").

9

policy, custom, or any other history of similar incidents. In other words, [the plaintiff] failed to allege facts to establish that anyone besides himself suffered . . . inadequate medical care as required" to establish a *Monell* claim); *Melton v. Hunt Cnty.*, No. 3:14-cv-2202-N, 2019 WL 5067907, at *3 (N.D. Tex. Oct. 8, 2019) ("[The plaintiff's] pleading consists of only conclusory allegations. [The plaintiff] does not establish that Hunt County's failure to train was the 'moving force' behind the constitutional violation nor does [the plaintiff] allege any facts that show that Hunt County or Sheriff Meeks acted with deliberate indifference.").

Therefore, Plaintiff failed to plead facts showing that his constitutional rights were violated, if at all, due to a municipal policy or custom. As a result, Plaintiff failed to allege facts that would extend liability to Collin County, and dismissal of Plaintiff's claim against Collin County is appropriate.

### 2. Plaintiff's Claims Against the Sheriff Office Defendants in Their Official Capacities

Plaintiff's claims against the Sheriff Office Defendants center around Plaintiff's allegations that he was forcefully removed and injured during the extradition transfer. To the extent Plaintiff sues the Sheriff Office Defendants in their official capacities, the claims are treated as claims for municipal liability against Collin County, as "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690 n.55). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)).

Here, Plaintiff's § 1983 claims against the Sheriff Office Defendants in their official capacities are duplicative of Plaintiff's claim against Collin County and, thus, should be dismissed.

*See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (affirming the district court's dismissal of the allegations against all municipal officers and two employees of the Corps of Engineers in their official capacities as duplicative of those asserted against the municipality); *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 340 (E.D. Tex. 2021) (finding the plaintiff's official capacity claims against police officers, to the extent they exist, were duplicative of those asserted against the municipality, and should therefore be dismissed).

### 3. Plaintiff's Claims Against the Sheriff Office Defendants in Their Individual Capacities

Plaintiff's claims against the Sheriff Office Defendants in their individual capacities also fail. In defense of the individual capacity claims, the Sheriff Office Defendants argue that (1) Plaintiff has failed to allege a claim against Sheriff Skinner, as he does not sufficiently allege Sheriff Skinner's personal involvement in the alleged constitutional violations and cannot assert claims for supervisory liability under § 1983, and (2) the Sheriff Office Defendants are immune from liability under the doctrine of qualified immunity. The court agrees.

#### a. Sheriff Skinner – No Personal Involvement

"It is firmly established that individual liability under § 1983 may not be predicated on the vicarious liability doctrine of *respondeat superior*. Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983." *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997) (collecting cases); *see also DeMarco v. Davis*, 914 F.3d 383, 390 (5th Cir. 2019).

The Sheriff Office Defendants argue that the claims against Sheriff Skinner should be dismissed because the Amended Complaint does not sufficiently allege Sheriff Skinner's personal involvement in the alleged acts causing the deprivation of Plaintiff's constitutional rights. In the

11

Amended Complaint, Plaintiff alleges the following with respect to Sheriff Skinner and the forceful transfer of custody:

- Sheriff Skinner was "present at the unlawful and illegal exchange of custody on 12-13-18 and ordered the personnel named below to physically remove plaintiff from the holding tank he was in to the McCurtain Co. Sheriff's vehicle which did injure plaintiff causing permanent damage to the nerves in plaintiff['s] neck and back…" (Dkt. #54, pp. 14-15).

- After Plaintiff refused to submit to the exchange of custody, "the Lt. kept returning to the Sheriff Skinner and the McCurtain Co. Deputy Pittman then returning back to plaintiff stating that if plaintiff did not submit he would be forcefully removed from Texas and so it was." (Dkt. #54, p. 18).

Plaintiff does not allege Sheriff Skinner was personally involved in physically moving Plaintiff from the holding tank in the Collin County Detention Facility to the transport vehicle. Even assuming Sheriff Skinner ordered officers to physically remove Plaintiff from the holding tank to the transport vehicle after Plaintiff refused to submit to the exchange of custody, Plaintiff does not allege Sheriff Skinner ordered officers to use an unreasonable or excessive amount of force on Plaintiff. The fact that individual officers may have violated policy or otherwise acted improperly does not itself impute liability to Sheriff Skinner. *See Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1988). Furthermore, any allegation that Sheriff Skinner implemented policies that violated Plaintiff's rights, Plaintiff did not allege facts to support the inference that a custom or policy actually existed, as discussed above. And finally, as noted above, Plaintiff did not allege facts showing that any other inmate's constitutional rights were similarly violated, and therefore, there are no allegations to support Sheriff Skinner knew of any "pattern of similar violations," as

required to allege he acted with deliberate indifference. *See Romero v. Brown*, 937 F.3d 514, 523 (5th Cir. 2019).

### b. Sheriff Office Defendants – Qualified Immunity

In defense of individual capacity claims, the Sheriff Office Defendants argue they are immune from liability under the doctrine of qualified immunity. (Dkt. #73, pp. 13-19).

If qualified immunity is raised as a defense, the burden shifts to the plaintiff to plead specific facts to overcome the defense. *Terwilliger v. Reyna*, 4 F.4th 270, 284 (5th Cir. 2021) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)). To defeat qualified immunity at the pleading stage, the plaintiff must allege facts showing: (1) the defendant violated the plaintiff's constitutional rights; and (2) the right was clearly established at the time of the alleged conduct. *Id.*; *Romero*, 937 F.3d at 519 (citing *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017)). A right is clearly established if the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Terwilliger*, 4 F.4th at 284 (quoting *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004)). If the right was clearly established, the court must decide whether the defendant's actions were objectively reasonable in light of the clearly established law. *See Gates*, 537 F.3d at 419. Courts have the discretion to decide which prong of the two-part test to address first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Liberally construed, Plaintiff's Amended Complaint asserts an excessive force claim. Plaintiff alleges that he was forcefully removed during his extradition transfer from the Collin County Detention Facility to the transport vehicle. Specifically, Plaintiff alleges:

> On 12-13-18 Collin Co. Sheriff Officers Young, Green, and Lt. Christenson attacked Plaintiff in an illegal exchange of custody at the Collin Co. Jail causing injury to Plaintiff['s] arm[,] back[,] and neck which has resulted in permanent nerve damage. Plaintiff had refused to submit to the illegal exchange of custody while

13

> explaining to Young, Green, and Christenson that there had been no governor's warrant issued in the State of Texas and the "Extradition" was being conducted illegally and in fact plaintiff was held illegally. It was at this point the Lt. kept returning to . . . Sheriff Skinner and the McCurtain Co. Deputy Pittman then returning back to plaintiff stating that if plaintiff did not submit he would be forcefully removed from Texas and so it was. Plaintiff believes Young caused the injuries because Green and Lt. seem to only be doing as told while Young was causing all the pain although it was hard to tell for plaintiff was face down on the ground. Green is the only one that seemed to want to help but refused.

(Dkt. #54, pp. 17-18).

As an initial matter, the Amended Complaint is unclear which officers used force on Plaintiff and caused his alleged injuries. While Plaintiff's Amended Complaint alleges Officer Young, Officer Green, and Lieutenant Christensen were all involved in physically removing Plaintiff from the holding tank in Collin County to the transport vehicle, Plaintiff then alleges Officer Young caused "all the pain," but "it was hard to tell." Nonetheless, the court will presume for the purpose of resolving the Sheriff Office Defendants' Motion to Dismiss that Officer Young, Officer Green, and Lieutenant Christensen were all involved in physically removing Plaintiff, which allegedly resulted in Plaintiff's injuries.

The Sheriff Office Defendants analyze Plaintiff's excessive force claim under the Fourth Amendment. According to the Amended Complaint, however, Plaintiff was in custody at the Collin County Detention Facility, having been booked into the Collin County Detention Facility at the time the incident occurred. In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court analyzed a pretrial detainee's excessive force claim under the Fourteenth Amendment. *See id.* at 393, 400-01; *accord Cope v. Cogdill*, 3 F.4th 198, 206 (5th Cir. 2021) ("The constitutional rights of a pre-trial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment."); *see also Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir.

14

1996) ("The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment.").

The parties do not appear to dispute that Plaintiff was booked into the Collin County Detention Facility at the time the incident occurred; therefore, Plaintiff's claim regarding the use of force is found under the Due Process Clause of the Fourteenth Amendment. *See Cope*, 3 F.4th at 206; *Zavala v. Harmon*, No. CV H-19-03341, 2022 WL 17220034, at *4 (S.D. Tex. Oct. 19, 2022). "Further, regardless of whether the Fourteenth or Fourth Amendment applies here, several circuit courts have noted that '[a]fter *Kingsley*, the Fourteenth Amendment's standard is analogous to the Fourth Amendment's.'" *Zavala*, 2022 WL 17220034, at *4 (quoting *Patel v. Lanier Cnty., Ga.*, 969 F.3d 1173, 1182 (11th Cir. 2020)); *see also Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (explaining that the Supreme Court in *Kingsley* "thus clarified that the Fourteenth Amendment, like the Fourth, exclusively employs an objective-reasonableness standard"); *Hopper v. Phil Plummer*, 887 F.3d 744, 752 (6th Cir. 2018) (explaining that "[w]hen assessing excessive-force claims under the Fourth or Fourteenth Amendments, for example, we inquire whether the plaintiff has shown 'that the force purposely or knowingly used against him was objectively unreasonable'" (quoting *Kingsley*, 576 U.S. at 389, 396-97)); *Harris v. Dobbins*, No. 3:22-CV-479-TSL-MTP, 2023 WL 2899994, at *15 (S.D. Miss. Apr. 11, 2023) ("[I]t makes no difference whether these claims are analyzed under the Fourth or Fourteenth Amendment because the standard governing both is the same: Objective reasonableness."); *Williams v. City of Houston, Texas*, No. CV H-16-3342, 2019 WL 2435854, at *8 n. 1 (S.D. Tex. Jun. 11, 2019) (noting that "Courts have consistently applied the same objective-reasonableness standard to plaintiffs' excessive-force claims under the Fourth and Fourteenth Amendments" (citing *Graham v. Conner*, 490 U.S. 386, 395 (1989), and other cases)).

To prevail on a Fourteenth Amendment excessive force claim, a pretrial detainee like Plaintiff must show that force was "purposely or knowingly used" against him in a manner that was "objectively unreasonable." *Kingsley*, 576 U.S. at 396-97; *see also Fairchild v. Coryell Cnty.*, 40 F.4th 359, 362-63 (5th Cir. 2022) ("Force against a pretrial detainee is 'excessive' and a violation of the Fourteenth Amendment when the force was objectively unreasonable."). To defeat qualified immunity and prevail on an excessive force claim under the Fourteenth Amendment, a pretrial detainee must show that the defendants applied force in a manner that was "not rationally related to a legitimate nonpunitive governmental purpose" or that the actions were "excessive in relation to that purpose." *See Kingsley*, 576 U.S. at 398 (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)). The "objective reasonableness" inquiry "turns on the facts and circumstances of each particular case and various factors may bear on the reasonableness or unreasonableness of the force used." *See Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 317 (5th Cir. 2021) (quoting *Kingsley*, 576 U.S. at 397). These factors consist of:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Fairchild*, 40 F.4th at 363 (quoting *Kingsley*, 576 U.S. at 397). The court "must assess the reasonableness of the force from the perspective of a jailer who is often forced to make split-second decisions in tense situations." *Id.* (citing *Kingsley*, 576 U.S. at 399). "A court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Kingsley*, 576 U.S. at 397 (cleaned up).

Applying the *Kingsley* factors here, the court finds that only the second factor—the extent of Plaintiff's injury—weighs in Plaintiff's favor, as Plaintiff alleges that his arm, back and neck were injured, resulting in permanent nerve damage. *See Galada v. Payne*, 421 F. App'x 460, 462 (5th Cir. 2011) (stating that for purposes of an excessive force claim, pretrial detainees must show that they "suffered at least some form of injury that [wa]s more than de minimis").

The remaining *Kingsley* factors—(1) the relationship between the need for the use of force and the amount of force used, (2) any effort made by the officer to temper or limit the amount of force, (3) the severity of the security problem at issue, and (4) whether Plaintiff was actively resisting —weigh in the Sheriff Office Defendants' favor. Plaintiff alleges that he refused to submit to the exchange of custody and therefore the Sheriff Office Defendants physically removed him from the Collin County Detention Facility to the transport vehicle. Plaintiff's admission that he was resisting the transfer of custody indicates that some use of force was necessary to effectuate the transfer and that Plaintiff could have been injured as a result of any struggle. There is no allegation that the force was used to punish Plaintiff or that the Sheriff Office Defendants' conduct was objectively unreasonable or malicious or sadistic. Additionally, Plaintiff's refusal to submit to the exchange of custody could reasonably be interpreted as a threat to institutional security and the safety of others because it took place in a holding tank, which is generally a common space outside of prison cells, thereby justifying the use of some degree of force to dissipate any threat to institutional order. *See Kingsley*, 576 U.S. at 399 (recognizing that "[r]unning a prison is an inordinately difficult undertaking" and that "safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face" (internal citations omitted)). Finally, any force was tempered

17

as Plaintiff does not allege that the Sheriff Office Defendants continued using force after physically moving Plaintiff from the holding tank to the transport vehicle.

Upon application of the *Kingsley* factors, the court finds that Plaintiff's allegations fail to establish that the Sheriff Office Defendants' actions were objectively unreasonable. As such, Plaintiff has failed to plead a constitutional violation sufficient to support an excessive force claim under the Fourteenth Amendment. Because there is no alleged violation of a clearly established constitutional right by the Sheriff Office Defendants, the court finds that they are entitled to qualified immunity. *See McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017).

Based on the foregoing, the court recommends granting the Sheriff Office Defendants' Motion to Dismiss and dismissing Plaintiff's excessive force claims against the Sheriff Office Defendants with prejudice.[4]

## C. <u>Leave to Amend</u>

Generally, a *pro se* plaintiff should be allowed to amend his complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." *Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020) (citing *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)). A district court may consider the following factors in deciding whether to grant leave to amend: undue delay, bad faith or dilatory motive on the plaintiff's part, repeated failures to cure deficiencies by previous amendments allowed, undue prejudice to the opposing party, and futility of the amendment. *Id.*

---

[4] In ruling upon the Sheriff Office Defendants' Motion to Dismiss, the court need not consider whether Plaintiff has exhausted his administrative remedies, as required by the PLRA, 42 U.S.C. § 1997e(a). *See* 42 U.S.C. § 1997e(c)(2) ("In the event that a claim . . . fails to state a claim upon which relief can be granted, . . . the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").

Here, Plaintiff has provided no indication he would be able to cure the pleading deficiencies identified herein if he were allowed to amend. Moreover, when the plaintiff makes no attempt to amend his complaint in response to the defendant's challenge pursuant to Rule 12(b)(6), dismissal is proper when the plaintiff's allegations fail to state a claim for which relief can be granted. *See Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010); *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997). Under these circumstances, the court finds granting Plaintiff leave to amend would be futile, would unnecessarily delay these proceedings, and would prejudice Defendants, who have already filed motions to dismiss and would likely file additional motions to dismiss if a second amended complaint were filed.

### D. Strike under 28 U.S.C. § 1915(g)

Under the PLRA, an inmate may not file any lawsuit or appeal *in forma pauperis* if he has three or more lawsuits or appeals previously dismissed as "frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The statutory provision was designed to stop abusive litigious practices employed by inmates.

Because the court is recommending dismissal of some of Plaintiff's claims for failing to state a claim upon which relief may be granted, it is further recommended Plaintiff be advised this dismissal counts as a strike pursuant to 28 U.S.C. § 1915, and should he accumulate three strikes, he may be denied *in forma pauperis* status and be required to pay the full filing fee when filing additional civil actions or appeals unless he demonstrates he is in imminent danger of serious physical injury.

## IV. RECOMMENDATION

For the reasons set forth above, the court recommends the Motions to Dismiss (Dkt. ##72, 73) be **GRANTED**. To the extent Plaintiff is requesting relief under RLUIPA, the court recommends such a claim be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. The court further recommends Plaintiff's claims under 42 U.S.C. § 1983 against Collin County, Sheriff Skinner, Lieutenant Christensen, Officer Young, and Officer Green be **DISMISSED WITH PREJUDICE**. The Court further recommends this dismissal be counted as a strike pursuant to 28 U.S.C. § 1915.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 22nd day of January, 2024.**

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE